White v. Chouteau.

\ —————o ❦ o—————

SAME TERM. *Before the same Justices.*

WHITE & ELDER *vs.* CHOUTEAU and others.

A mere ordinary merchandise broker, not acting under a *del credere* commission, can not maintain an action in his own name to recover the price of goods sold by him for the owner.

But if the broker has advanced upon the goods sold, or has guarantied the sale, he may sue in his own name.

The admission of the owner of goods that he has made a sale and received the purchase money, upon the guaranty of the broker, is competent evidence against the purchaser, in an action by the broker after the owner's death; and, in connection with other circumstances, is sufficient to authorize the plaintiff to go to the jury upon the question of guaranty.

ERROR to the New-York common pleas. The declaration contained the common money counts. Plea, the general issue. On the trial it was proved that early in 1844, Chouteau, one of the defendants, came to the counting room of the plaintiffs in Baltimore, and inquired for indigo. The plaintiff Elder took him into a Mr. Wirgman's store, in the same building, to look at some, and Elder and Chouteau returned together, bringing a sample with them. Chouteau said he did not believe it a pure article, but made an offer for it, which offer was communicated by the plaintiffs to the owner, who accepted it, and the indigo

White *v.* Chouteau.

was sold to Chouteau, who bought it on his own judgment; *the plaintiffs telling him that if he bought it, he must buy it on his own judgment, as they were merely agents.* The plaintiffs claimed that they acted as brokers for the owner of the indigo, who was the vendor in the sale. The indigo was delivered by the plaintiffs on board a vessel bound for New-Orleans, by direction of the plaintiffs. The sale was at ninety cents per pound, on a credit of six months. It was proved that the plaintiffs were brokers and commission merchants, and that the usual commissions are one per cent, paid half by the seller and half by the purchaser. That by the custom of the trade in Baltimore, brokers get a commission of one per cent for shipping, when they do so on orders, and that the usual commission is one per cent, paid by the purchaser. One Gay purchased two other ceroons, (there being four in all,) in company with the defendant Chouteau; was employed by Chouteau & Valle as their agent, in completing the purchase from the plaintiffs, and in regard to the delivery. Gay was a witness, and testified that *the name of the owner of the indigo was not communicated.* He proved the delivery of the two ceroons bought by the defendants to them. Wirgman testified that the four ceroons were in his possession, and belonged to Cha's J. Tully, of Philadelphia; that he was present when Tully, the plaintiff Elder, the defendant Chouteau, and Gay, the purchaser of the other two ceroons of indigo, were together examining and in treaty about the indigo in Wirgman's store. That offers were made and rejected. That the parties left and went into the plaintiff's counting room, in the same building, from which Tully returned with money in his hands, declaring that he was paid for the indigo by the plaintiffs, and ordered Wirgman to deliver it to the plaintiffs, which Wirgman did. In addition to this, the testimony of Gay and Maguire showed that the defendants purchased from the plaintiffs, and ordered the plaintiffs to ship it, which the plaintiffs did; and that it was delivered to the defendants—all being part of the *res gestæ.* The defendants did not pretend that they ever paid any one for the indigo. The death of Tully was also proved. And it appeared that White & Elder rendered the invoice in their own names.

HARVARD SCHOOL LIBRARY.

White *v.* Chouteau.

The plaintiffs introduced a letter from the defendants to the plaintiffs, which, it was claimed, showed that the whole transaction was with the plaintiffs, and that the defendants did not even know the owner's name. The court nonsuited the plaintiffs, on the ground that, in order to maintain the action, they must show that they had either paid for the indigo, or acted *del credere ;* and that they had shown neither : and the writ of error was brought to reverse the judgment of nonsuit.

*J. Larocque,* for the plaintiffs in error. I. The plaintiffs were clearly entitled to maintain the action in their own names, in this case, without any reference to their acting *del credere,* or having paid for the indigo, upon the familiar ground of their having made the sale as agents, and having an interest in the recovery, for their commissions and charges. This familiar principle of law, by a strange oversight, appears to have been entirely overlooked by the court below, in rendering their judgment. It was a case in which either the principal or agent might sue, and where a recovery by either would bar an action by the other. (1 *Chit. Pl.* 4. *Id.* 7*th Am. ed. p.* 7, *a. Grove* v. *Dubois,* 1 *T. R.* 112. *Atkyns* v. *Amber,* 2 *Esp.* 433. *Williams* v. *Millington,* 1 *H. Black.* 82. *Ingersoll* v. *Van Bokkelin,* 7 *Cowen,* 670. *Buffum* v. *Chadwick,* 8 *Mass. R.* 103. *Alsop* v. *Caines,* 10 *John.* 396. *Sadler* v. *Leigh,* 4 *Camp.* 395, 195. *Hulse* v. *Young,* 16 *John.* 1.) II. The right to a recovery on this ground was not at all impaired by the plaintiffs having remitted their commissions, on the trial. The nonsuit and judgment must stand or fall by the plaintiffs' rights as they existed at the time of the commencement of the action, and the very acceptance by the defendants, on the trial, of a *remittitur* of the commissions, establishes their right to bring the action at the time when it was brought. III. It is not necessary that the case should show that this point was raised by the plaintiffs' counsel on the trial. It could only be raised *in answer* to the defendants' motion for a nonsuit, and the case need not show what answers the plaintiffs' counsel made to the defendants' motion for a nonsuit, but only that they excepted to the decision when pronounced. IV.

White *v.* Chouteau.

The court erred in granting the nonsuit, even upon the grounds on which they placed it. All the points made by the defendants amount, in short, to this, that the action could not be sustained without proof of authority from the defendants to the plaintiffs, to make the purchase, and guarantee the sale, or make payment on account of the defendants, which proof the defendants' points assume, had not been given. V. The testimony of the witness, Wirgman, that he was present when Tully, the plaintiff Elder, the defendant Chouteau, and Gay, the purchaser of the other two ceroons of indigo, were together examining and in treaty about the indigo in Wirgman's store; that offers were made and rejected; that the parties left and went into the plaintiffs' counting room in the same building, from which Tully returned with money in his hands, declaring that he was paid for the indigo by the plaintiffs, and ordered Wirgman to deliver it to the plaintiffs, which Wirgman did, coupled with the testimony of Gay and Maguire, that the defendants purchased from the plaintiffs, and ordered the plaintiffs to ship it, which the plaintiffs did, and that it was delivered to the defendants, were all parts of the *res gestæ*, and made an abundant case to go to the jury, to show a purchase made directly by the defendants from the plaintiffs, the defendants never having pretended that they ever paid for the goods. (1 *Cowen & Hill's Notes, pp.* 231 *to* 234. 2 *Id. p.* 585, *note* 444. *Sherman* v. *Crosby,* 11 *John.* 70. 2 *Cowen & Hill's Notes, p.* 669, *n.* 485.) VI. There is no proof any where in the case that the defendant Chouteau knew who the owner of the indigo was, though he was present during a part of the interview. Gay, one of the purchasers, who was present throughout, says expressly, that he did not know who was the owner. But even if they had known, it would have made no difference. The circumstance only shows more pointedly the propriety of the cause going to the jury entirely as a transaction between the parties to the suit. VII. The facts of the defendants having made the purchase, and authorized the plaintiffs to ship the goods to them, were clearly proved; and there was no counter testimony, and if there had been, it would have been a case for the jury to pass upon, and not for the court.

White *v.* Chouteau.

*A. H. Dana,* for the defendants in error.   I. The plaintiffs were not entitled to bring an action, unless upon a sale made by them as principals, or unless they were the agents of the defendants to make the purchase, and expressly authorized by them to guarantee payment, and such payment was actually made by them, under a legal liability therefor.   The first is not claimed by the plaintiffs, nor is it sustainable by the evidence in the case.   There is nothing to show that they acted as prin-. cipals.   On the contrary, the owner of the indigo was present when the offer was made by the defendant Chouteau, and subsequently the plaintiffs were merely the agents of the owner in accepting the offer.   The cause of action alledged is, that they have paid the price of the indigo for account of the defendants.   But this alone, even if the payment was satisfactorily proved, is not sufficient, without also showing authority derived from defendants to make such payment.   The general question is, therefore, whether the plaintiffs have shown that they have, as the agents of the defendants, and *under express authority from them,* paid for the indigo.   The plaintiffs were not the agents of the defendants at all, except so far as may arise out of the fact, that when the plaintiff White, on behalf of the owner, Tully, accepted the offer previously made, Gay directed him to forward the goods to St. Louis.   It was the same direction that would have been given to the seller himself, and no other or different effect is to be given to it.   If it should be admitted that this was so far an employment of the plaintiffs as to authorize them to charge brokerage for shipping the goods, it imparted no authority beyond that.   They were clearly not the agents of the defendants, either to make or complete the purchase.   The contract was between the defendants and Tully, and the plaintiffs had no power to modify or add to the liability of defendants.   Such an agency, if it were made out by the evidence, would have been unlawful, and inconsistent with the duty of the plaintiffs as brokers.   They could not be the agents of both buyer and seller, except to sign a memorandum of the contract to bind both.   (*Dunl. Paley on Agency,* 10, 33.   *Stor. Agency,* § 211.   *Copeland* v. *Merc. Ins. Co.,* 6 *Pick.* 204.   *Florence* v. *Adams,* 2 *Rob. La. Rep.* 556.)

Neither could the plaintiffs, after a negotiation had been commenced with the principal, substitute themselves in his place, and make it a contract between themselves and the defendants, or take advantage of it by any private arrangement with Tully, without the assent of the defendants. If the claim of the plaintiffs is to be limited to what arises out of their employment by defendants as agents, it could be nothing more than shipping the goods, and it would be absurd to infer from such a limited employment the power of settling with the seller. If the terms had not been sufficiently arranged by the parties themselves, it would have been a sufficient reason for not sending the goods. To assume that an agent, merely authorized to ship, may do every thing which is necessary to enable him to make the shipment, would be giving him the power of varying the contract, or making a new one, if any objection should be made by the seller. The rule is, that the agent is limited to the scope of his employment. What he has to do, is what his employer might naturally expect of him in the regular course of business. A special employment must be strictly pursued. (*Dunl. Paley*, 190, 2.) An insurance broker, employed to settle losses, has no authority to pay them. (5 *John.* 58. 7 *Wend.* 446. 1 *Blackf.* 252. 7 *M. & W.* 595.) A power of attorney to compound, or to transact business generally, does not authorize negotiation or indorsement of bills received in payment. A factor has some discretionary power, but a broker is a special agent, and limited to the precise instruction. (*Dunl. Paley,* 191, *n.* 4 *Doug.* 48. 1 *Taunt.* 347. 5 *B. & A.* 204. 8 *Wend.* 494. *Dunl. Paley,* 13, *note,* 207. 1 *Esp. Rep.* 111. 7 *Ves.* 276.) II. As to the admissibility of the declarations of Tully: The action could not be sustained, even if those declarations should be admitted. The case would be, simply, that the sale had been *cashed* by plaintiffs ; but there is an absence of all proof of authority from the defendants to make such payment for them, or what was the amount paid, and it is, therefore, even upon Tully's own statement, consistent to suppose that the transaction was merely a loan, or advance by the plaintiffs for the accommodation of the owner. But these declarations were inadmissible. They were

not part of the *res gestæ*, nor made in the presence of the defendants. Three things are required to make such declarations evidence, viz. : that the person whose declarations are offered, should, if living, be a competent witness. The evidence must be in the hand-writing of such deceased person. The declarations must have been adverse to the interest of the party making them. In none of these respects were the declarations of Tully conformable with the requisitions of law. (*Cowen & Hill's Notes to Phil. Ev.* 640, 1, 644. *Id.* 694, 650. 1 *Phil. Ev.* 55. 1 *Taunt.* 141. 2 *J. J. Marsh.* 60. *Cowen & Hill's Notes* 639, 640.)

*By the Court*, EDWARDS, J. The facts, about which there is no dispute in this case, are, that at the time of the sale in question, the plaintiffs were merchandise brokers in the city of Baltimore ; and that Tully, of Philadelphia, had a quantity of indigo in the possession of Wirgman, a commission merchant in Baltimore, for sale ; and that the same was sold by the plaintiffs.

The first ground taken by the plaintiffs is, that if they were, at the time of the sale, nothing more than ordinary brokers, they would be entitled to recover in this suit ; and they refer to the rule laid down by Chitty, in support of this position. (1 *Chit. Pl.* 7.) A reference to the authorities which are cited by the author, will show that they do not sustain the rule, to the unqualified extent to which he lays it down. The cases referred to, were those of persons selling under a *del credere* commission, or of brokers, or factors, who had made advances upon the goods sold by them, or auctioneers, or persons having some special property or interest in the subject matter of the agreement. But in none of the cases, has the right to sue in his own name, been extended to a mere ordinary broker. (*See Buckbee* v. *Brown*, 21 *Wend.* 110.)

The next ground taken by the plaintiffs is, that the purchase was made from them in their individual capacity ; and that they were the sole parties to the contract. We think that the testimony does not warrant such a conclusion. The first offer for the purchase of the indigo, must have been made to the plaintiffs *as*

*brokers ;* for they did not pretend to have any right to accept it, but referred to Tully, the owner, for an answer ; and it appears that he refused to sell at the price offered. The testimony also shows, that when the second offer was made, the plaintiffs did not accept it, and did not profess to have any authority to do so ; and in the letter which they sent to the defendants, accepting the offer, they said that the *owner had authorized them* to accept it.

The next question to be considered is, whether there was sufficient evidence to go to the jury upon the question of the guaranty of the sale by the plaintiffs; for if there was such guaranty, the plaintiffs would be entitled to sue in their own names. (*Grove* v. *Dubois,* 1 *T. R.* 112. *Atkins* v. *Amber,* 2 *Esp.* 493.) The only evidence, bearing directly upon this point, consists of the admissions of Tully, the owner of the indigo. It appears from the testimony of Wirgman, the commission merchant who had possession of the indigo, that on the same day that the defendant Chouteau examined it, Tully went into the plaintiffs counting room, and then came back, and said that he had made a sale, *and got the money upon the plaintiffs' guaranty.* He further says that when Tully came back, he told the witness that he had accepted the offer of the defendants, on the plaintiffs guaranteeing the sale, and he ordered the witness to deliver the goods to the plaintiffs. The same witness gives further evidence of a similar character, bearing upon the same point.

The first question to be considered upon this testimony is as to how far the admissions of Tully are evidence against the defendants ; it having been satisfactorily proved that he was dead at the time of the trial of this cause.

The exception to the general rule of evidence as to hearsay testimony is, that where the declarant is deceased, and where it appears that he possessed competent knowledge of the facts, and that his declarations were at variance with his interest, they are admissible in a suit between third persons, and such declarations need not be in writing. (*Ivat* v. *Finch,* 1 *Taunt.* 141. *Peacock* v. *Watson,* 4 *Id.* 16. 1 *Greenl. Ev.* §147.) The

White *v.* Chouteau.

declaration of Tully that he had received the plaintiffs' guaranty would not be at variance with his interest; but his declaration that he had made a sale, and received the money upon the plaintiffs' guaranty, was clearly against his interest; for it was an admission that his debt had been satisfied by the plaintiffs. (*Higham* v. *Ridgway,* 10 *East,* 109. *Middleton* v. *Melton,* 10 *B. & Cr.* 317.) It would seem then that as far as the admission of the receipt of money was concerned, the declaration was competent evidence against the defendants, and connected with the other circumstances of the case, we think that there was sufficient to authorize the plaintiffs to go to the jury upon the question whether the money was advanced upon the goods by the plaintiffs, as an inducement to the owner to accept the offer made by the defendants; and whether there was not a guaranty, which was executed and performed at the time of the sale, and as a condition of the sale. The circumstances of the case are certainly consistent with, and as we think tend to sustain such an inference; for Tully had at first refused the offer of the defendants, and it is reasonable to suppose that there was some new and additional inducement held out to him to accept it. It also appears, in further confirmation of this view of the case, that the plaintiffs, on announcing the sale to the defendants, assumed a new character; for the invoice was made out in their own names.

We think that upon this last point the judge should have submitted the case to the jury, and that he erred in not doing so.

The judgment must be reversed, and a new trial had in the court below.