THE COUNTY OF MAHASKA v. INGALLS, EX'R.

1. PRESUMPTIONS: ON APPEAL. The Supreme Court will not disturb an order of the Court below, overruling a motion for judgment based upon a prior order of the Court which does not appear in the record.

2. EVIDENCE: VERBAL DECLARATIONS. Verbal declarations are receivable in evidence in an action between third parties, when accompanied by the following pre-requisites: 1. The declarant must be dead; 2. The declaration must have been against the pecuniary interest of the declarant at the time it was made; 3. The declaration must be of a fact in relation to a matter concerning which the declarant was immediately and personally cognizable; and, 4. The Court should be satisfied that the declarant had no probable motive to falsify the fact declared.

3. SAME: DEATH. It is probable that the courts will not relax the rule making death a pre-requisite, unless it might be in the case of confirmed insanity.

4. SURETIES. Sureties on official bonds are not liable for prior delinquencies of the principal.

*Appeal from Mahaska District Court.*

MONDAY, APRIL 18.

THIS action was brought against the executor of John H. Shoemake, deceased, and the sureties on his official bond as treasurer. It appears that Shoemake was elected County Treasurer at the regular election next preceding the 1st day of November, 1858. By the act of 23d March, 1858, the School Fund Commissioners were required to deliver to the county treasurers all moneys, &c., belonging to their office. The County Judge required Shoemake to give "additional security in the sum of sixty thousand dollars by reason of the aforesaid increased liabilities and receipts of his office." The bond in suit was accordingly executed, November 1st, 1858, reciting the above facts, but was conditioned as required by § 554 of the Revision; the condition embracing "*all* money which might come into his hands by virtue of his office." The bond was not made retrospective. Shoemake died on or about October 20th, 1859. The breaches assigned are, that Shoemake misap-

propriated, failed to account for, and converted to his own use $5000 of the public money. The answers of the sureties are in denial, and set up specially that the bond was only intended to secure the faithful administration of the school moneys which might come into the hands of their principal and aver that he has fully kept his obligation.

The cause was, by consent, referred to three referees "for trial of the facts involved in the issues (made) by the pleadings."

The referees in their report, find, that from the commencement of Shoemake's term until his death, he was a defaulter in the sum of $3,415.44. They further find "that there was a default on the part of Shoemake on or about the 20th of August, 1858, in the sum of $2,700. That we have no means of determining from the evidence when the remainder of the defalcation took place, whether between the 20th of August, 1858, and the execution of the defendants' bond, or subsequent to the execution of said bond, nor whether the money constituting the said defalcation or any part thereof was in the hands of Shoemake at the time of the execution of said bond. We do not know affirmatively that there was any defalcation after the execution of defendants' bond, nor do we find negatively that there was not any."

On the trial before the referees, plaintiff raised certain questions relating to the admission of testimony, which are set out in the opinion; and in the District Court made these the basis of a motion to set aside the report, which was overruled and exceptions taken by the plaintiff.

The defendant made no exception to the report but moved for judgment on it "in pursuance of an order of Court in vacation." This order, as we infer from the record, although the matter is not clear, was one which awarded judgment against the defendant for $715.44.

On the report, the Court rendered judgment in favor of the plaintiff for $715.44 (being the amount of the whole deficit less the $2,700 which occurred before the bond in suit was executed), with interest from the date of the report. From this judgment both parties appeal.

*Seevers & Williams* for the plaintiff, cited 1 Greenl. Ev., 96.

*Hendershott & Burton* and *Thomas J. Street* for the defendants, cited 1 Phill. Ev., 293–296; 1 Greenl. Ev., § 181, (7th ed.), 290.

DILLON, J.—I. *As to the defendants' appeal:*

On the coming in of the report of the referees, the defendants made no motion to set the same aside, nor did they in any manner except thereto or to the rendition of judgment thereon, nor did they move for a new trial.

The only motion which the defendants made with reference to the report of the referee was, "for judgment on the same in pursuance of the order of the Court in vacation." It seems that the cause was tried before the Hon. J. H. GRAY, sitting in exchange with the Hon. WM. LOUGHRIDGE, and in the record there is a paper signed by Judge GRAY entitled "judgment by consent," which contains an order to the clerk to make the following entry: "The motion to set aside the report of the referees is overruled, to which *plaintiff* excepts, and judgment is entered on the report for plaintiff for $715.44, with interest," &c. The record shows that this motion was overruled and the defendants excepted, and this was the only exception which they took to the proceedings and judgment of the District Court. What order of the Court in vacation was referred to in the motion of the defendant, unless it be the paper above indicated, we have no means of knowing, and consequently we cannot say that the Court erred in overruling it.

If this was the paper, then the Court finally rendered judgment precisely in conformity therewith. The record, therefore, presents no errors of law which the defendants are entitled to have reviewed on appeal.

II. *As to the plaintiff's appeal:*

In the District Court the plaintiff moved to set aside the report of the referees, because, on the trial before them they had admitted improper testimony. This motion was overruled and the plaintiff excepted, and this is the only point which his appeal presents. It appears from the bill of exceptions that on the trial before the referees, the defendants, for the purpose of showing that the defalcation, if any existed, had occurred before the execution of the bond in suit, introduced as a witness one John White, who testified that he had a conversation with Shoemake before his death, and about the 20th of August, 1858 (which it will be observed was prior to the execution of the bond in suit), with regard to the condition of the public funds.

Against the plaintiff's objection, the witness was permitted to testify as follows:

"Mr. Shoemake told me that there was over $2,000 in the summer of 1858, that he was behind as treasurer of the county, and he wanted an arrangement made by which I should pay it. I agreed to fix it up, if Moreland would secure me. I afterwards saw Moreland, and he agreed to do so, but never done it, and the arrangement was not perfected. This conversation was about August 20th, 1858."

Against the plaintiff's objection, likewise, one Coolbaugh was permitted to testify, "That the said Jno. H. Shoemake, in the summer of 1858, stated in the presence of Coolbaugh, that he, the said Shoemake, was then behind with the county of Mahaska, in the sum of about $2,700."

The materiality and decisive importance of this testimony are apparent from the statement of the case above given, and from the report of the referees, and the judgment of

The County of Mahaska v. Ingalls.

the Court thereon ; and whether this cause shall be affirmed
or reversed, depends solely upon the admissibility in law
of this evidence.        •

The question which thus arises upon the record, is one
which has never before been presented to this Court. This
fact as well as the state of the authorities respecting it,
justifies, if it does not indeed require, the setting forth of
the views we entertain, somewhat at length.    It is the just
observation of one of the most learned as well as expe-
rienced of American jurists, that "The rules of evidence
are of great importance and cannot be departed from, with-
out endangering private as well as public rights.    Courts
are therefore extremely cautious in the introduction of any
new doctrines of evidence which trench upon old and estab-
lished principles." Per STORY, J., in *Nichols* v. *Webb*, 8
Wheat., 332.

We have conducted our examination of this question,
fully impressed with the conviction that it is dangerous to
innovate, though it must be admitted to be sometimes
necessary to do so, and are gratified in the belief that the
conclusion which we have reached, neither involves the
introduction into the law of evidence of any new principle
or the subverting of any old one.    Let us now look at the
nature of the case, and the attitude and situation of the
parties; for "all questions of evidence," says ABBOTT, C.
J., in *Doe* v. *Pettell*, 5 B. & Ald., 224, "must be considered
with reference to the particular circumstance under which
it is offered."    Lord MANSFIELD remarked in one case,
"We do not sit here and take the rules of evidence from
*Keble* or from *Saderfin*;" and in another suit admitted evi-
dence of an unusual character, "from the particular circum-
stances of the case."    *Clymer* v. *Littler*, 1 W. Black, 345.

This action was against the sureties in the "new or
additional bond," of the deceased county treasurer.    The
bond was not retrospective in its terms.    Consequently,

while the sureties would be bound for the public moneys in the hands of their principal, at the time of the execution of the bond in suit, although a previous bond then existed with different sureties, and also for money subsequently coming into his hands, yet they would not be bound for his past derelictions of duty or misconduct. *Townsend* v. *Everett*, 4 Ala., 607; *Farrar* v. *United States*, 5 Pet., 373; *Post Master, &c.*, v. *Norvell*, 1 Gilpin, 126; *Myers* v. *United States*, 1 McLean, 493; *United States* v. *Linn*, 1 How. (U. S.), 104.

The inquiry, then, as to the state of Shoemake's accounts, at and before the time the bond in suit was executed, was one of indispensable importance. It may be inferred from the report of the referees, that his official books and papers threw no light upon this subject. In this exigency, the sureties offered the testimony of which the plaintiff now complains. This testimony consisted of the verbal admissions of their principal on two separate occasions, and to two different persons, prior to the execution of the bond in suit, that he was behind, as treasurer of the county, in the sum of about $2,700. And here it is material to be noted, that these declarations, or more properly speaking, admissions, are distinctly and unequivocally stamped with the following marked features:

1st. They were made against the pecuniary interest of the declarant, for they were of such a nature, so circumstantial and precise, as to constitute in an action against him by the plaintiff, the foundation and evidence of a legal liability to that extent.

2d. They involved, moreover, the admission of conduct, on his part, which would render him, if known, infamous in the eyes of the public, and criminal in the eyes of the law; for the penal statutes of the State declare, that every officer who shall unlawfully "take, convert, invest, use, loan, or fail to account for, any portion of the public money

entrusted to him, shall be imprisoned in the penitentiary, fined in a sum equal to the amount embezzled, and be also disqualified from holding any office under the laws or constitution of the State." Rev., § 4243.

3d. They were not only made *ante litem motam*, but were made long prior to the execution of the bond in suit, and consequently without any reference to the controversy which has since arisen.

4th. The declarant was dead at the time these admissions of his were offered and received as evidence in an action between third parties, viz., between the county and his sureties.

Such were the circumstances and nature of these admissions, and now the question recurs: Were they competent and legal evidence?

If these same facts had appeared by written entries or statements, the deceased party being in a position to know the facts, and the facts being undeniably adverse to his interest, there is no question as to their being receivable in evidence. All the authorities would here agree. See particularly Rev., § 3998; *Gross* v. *Watlington*, 3 Brod. & Bing., 132, where the entries in the books of his office of a deceased tax collector were held admissible against his surety on his official bond; *Middleton* v. *Milton*, 10 Barn. & Cress., 317, where the same principle was extended to entries on *private* books, kept by the party for his own convenience, whereby he charged himself with the receipts of sums of money; 1 Greenl. Ev., 147, *et seq;* 1 Phill. Ev., 293, *et seq;* *Higham* v. *Ridgway*, 10 East., 109; S. C., 2 Smith, L. C., 193, with English and American notes; *Townsend* v. *Everett*, 4 Ala., 607, where the annual settlements of a treasurer, being acts required by law, were admitted against his sureties; 5 How. (U. S.), 29; 9 W. & S., 109; *Doe* v. *Turford*, 3 B. & Ad., 898, and remarks of Mr. Justice PARKE as to distinction between entries in the course of business, and

entries against the interest of the party making them. If the entry is contemporaneous and made in the course of business by an indifferent party since deceased, it is even held that it need not be an entry against the interest of the party making it. *Dow* v. *Sawyer*, 29 Maine, 118; *Augusta* v. *Windsor*, 19 Maine, 317, (1841); *Nichols* v. *Webb*, 8 Wheat., 3##; 1 Smith, L. Cas., 333, (top and notes); 1 Greenl. Ev., 115, note and cases above cited. But see Rev., § 3998.

But where the entry, declaration or written statement is a private one and is not admissible as being original evidence, that is, as being part of the *res gestæ*, then generally, if not invariably to be admitted against third parties, the person who made it must be deceased, and it must have been hostile to his pecuniary interest when made. See authorities above cited, also *Roe* v. *Raulings*, 7 East., 279; *Chase* v. *Smith*, 5 Verm., 551; *Burton* v. *Scott*, 3 Rand., 399; *Holliday* v. *Littlepage*, 2 Munf., 316; *Thompson* v. *Stevens*, 2 Nott. & McC., 493; where on a ground not very clearly defined, a certificate of a deceased attorney was admitted to show who paid certain costs; *Parker* v. *The State*, 8 Blackf., 292, where principal's letter admitting a liability was received against his surety, but *quere?* and compare with *The Governor* v. *Shelby*, 2 Blackf., 26; and with *Evans* v. *The State*, 13 Ala., 787; *Bondurant* v. *Bank*, &c., 7 Ala., 830; 4 *Id.*, 607; *Townsend* v. *Kerns.*, 2 Watts, 180; *Harrinian* v. *Brown*, 8 Liegh., 697; where the admissions of a party who could not be compelled to testify and which were against his interest, were received as if he were deceased, *sed quere?* and contra, *Churchill* v. *Smith*, 16 Verm., 560.

In the case at bar the declarations were verbal and the question yet remains to be considered whether verbal admissions stand upon the same footing as written ones.

Aside from the superior weight and value due to declarations reduced to writing, we did not suppose any distinction could be justly drawn in principle between these and oral or parol declarations. We have been led to examine this question as to an alleged difference in this regard, as fully as the time and means at our disposal would allow, in consequence of an observation of the late Chief Justice SHAW, and of the American editors of Phillipps on Evidence. In treating of the general subject of the admissibility of "Declarations by deceased persons against their interest," these Editors remark: "We believe not one [case] has gone the length of saying that the *oral* declaration of a person, however much it may militate against his interest, shall be received merely upon the ground that he is dead." 3 Phill. Ev., Cowen & Hill's Notes, 260. It was held in *Lawrence* v. *Kimball*, 1 Met., 524, in an action by the plaintiff against the assessors for ordering his property sold for taxes which were in fact paid, that a deceased collector's statement in a conversation with a third person, that the tax in question had been paid, were not admissible in evidence, not being part of the *res gestœ* and not being in writing. "It is argued," says Chief Justice SHAW in delivering the opinion of the Court in this case, "that the evidence was within another exception to the rule respecting hearsay, viz., being an admission against his interest at the time. *Higham* v. *Ridgway*, 10 East., 109. But we think this has been confined wholly to cases of entries, made in books, &c., by a person deceased, in relation to a matter contrary to his interest at the time." The "looseness and uncertainty of mere verbal statements" compared with the "clearness and certainty of written memoranda," is the ground of the (alleged) distinction. And a similar view was taken in the prior case, in the same court, of *Framingham, &c., Co.* v. *Barnard*, 2 Pick., 532.

In consequence of these statements, so deservedly entitled, from their source, to great weight and credit, we have been led to explore this question to its foundation, and are constrained to the conclusion that the cases do not establish any distinction in this regard, in principle, between oral and written admissions. We will take a brief view, first of the English, and then of the American authorities.

Mr. Phillipps, treating of the subject (Ev., vol. 1, p. 310), says: "In the cases which have been referred to, it will have been noticed that the declarations have, in most instances, consisted of memoranda or entries; but from several of the examples it may be collected that *verbal declarations* are admissible though unaccompanied by any writing or by any act done." In the note he remarks: "Verbal declarations may be thought of inferior weight to those written, as being more carelessly·made, and being often unfaithfully reported; they are, besides, less frequently connected with any course of business." 1 Phil. Ev., 310, and note.

Mr. Starkie regards "the rules by which the reception of this class of evidence is governed as not very strictly defined," 1 Ev., 44; yet considers it "as an established principle of evidence, that if a party who has peculiar knowledge of the fact, by his written entry, or *even declaration concerning it*, charges himself or discharges another, upon whom he would otherwise have a claim, such entry is admissible evidence of the fact, after the death of the party;" Id., 355; "and oral declarations depend partly upon the same principles with written entries, but are far weaker in degree." Id., 365, Note, p. 7, Am. Ed.

The most recent English author on evidence is Mr. Best. In his late work he lays down the rule that declarations against interest, made by deceased parties, are receivable in evidence in proceedings between third persons, at least when they were made against their pecuniary interest. Best on Ev., 577, § 483-5 (2 Lond. ed., 1855). · He·thus

continues: "In both classes of cases, viz., declarations against interest and declarations in the ordinary discharge of duty, the evidence commonly appears in a written form and it has even been made a question whether this is not essential to its admissibility. *Furdson* v. *Clogg*, 10 M. & W., 572. The inclination of the authorities, however, is rather to the effect that *verbal declarations*, answering of course, the requisite conditions, are equally receivable, and it seems difficult to establish a distinction in principle between the cases." Id., § 485.

The doctrine is thus stated by PARKE, J. in 10 B. & C., 317: "The general rule undoubtedly is, that facts must be proved by testimony on oath. This case falls within the exception necessarily engrafted upon that rule, viz., that an admission of a fact by a deceased person which is against the interest of the party making it at the time, is evidence of that fact as between third persons."

It would require too much space to refer to the English cases in detail where verbal admissions have been received, and we therefore content ourselves with citing those that we have found and examined. *Ivat* v. *Finch*, 1 Taunt. (1808), 141, per Chief Justice MANSFIELD; *Strode* v. *Winchester*, 1 Dick., 397 (1767), per Lord CAMDEN, Ch.; *Doe* v. *Williams*, 1 Cowp., 621 (1777), per Lord MANSFIELD; *Doe* v. *Pettett*, 5 Barn. & Ald., (1821), 223; *Davis* v. *Pearce*, 2 D. & E., 53; *Doe* v. *Jones*, 1 Camp., 367; *Barker* v. *Bay*, 2 Russ., 63 (A. D. 1826), per Lord ELDON, who declared that "the cases fully satisfy me that evidence is admissible of declarations made by (deceased) persons, who have knowledge of the subject to which such declarations refer and where their interest is concerned, and the only doubt I have entertained was as to the position (contended for by counsel) that you are to receive evidence of declarations where there is *no interest*." See also valuable brief of Mr. Heald in 2 Russ., 63; *Peaceable* v. *Watson*, 4 Taunt.,

16; and see opinions of Lords BROUGHAM and CAMPBELL, in the celebrated *Sussex Peerage Case*, 11 Cl. & Fin., 85, 111, 113, seemingly ignoring any distinction between verbal declarations and written statements. Mr. Greenleaf thus states the doctrine : "But declarations of the other class of which we are now to speak, are *secondary* evidence, and are received only in consequence of the death of the person making them. This class embraces not only entries in books, but all other declarations or statements of facts, *verbal* or in writing, and whether they were made at the time of the fact declared or at a subsequent day. But to render them admissible it must appear that the declarant is deceased ; that he possessed competent knowledge of the facts or that it was his duty to know them, and that the declarations were at variance with his interest. When these circumstances concur the evidence is received, leaving its weight and value to be determined by other considerations. 1 Greenl. Ev., § 147. "The ground upon which this evidence is received is the *extreme improbability of its falsehood*" (Id., § 148), and (it might have been added) the necessity of the case. Mr. Greenleaf supports his text wholly by reference to the English decisions.

In general, when the question has arisen in American Courts, it does not appear to have been very thoroughly considered. The reception of verbal admissions against his interest, and where the declarant is dead, is supported by the following cases, more or less strongly : *White* v. *Choteau*, 10 Barb., 202; *S. C.* again, 1 E. D. Smith, 493 ; *People* v. *Blakely*, 4 Park., Cr. Rep., 176 ; *Holliday* v. *Little-page*, 2 Munf., 316 ; *Prather* v. *Johnson*, 3 Harris '& J., 487 (meagre case) ; *Trego* v. *Huzzard*, 19 Pa. St. Rep., 44? ; *S. C.*, 35 Id., 9 ; see also 25 Id., 334 ; *Respublica* v. *Davis*, 3 Yeates., 128 (meagre case) ; *Simenton* v. *Bouchar*, 2 Wash., 473 (no authorities or discussion) ; *Coleman* v. *Frazier* (A. D., 1856), 4 Rich., (*S. C.*,) 147 ; *Hinckley* v. *Davis*, 6 N. H.,

210; *Gilchrist* v. *Martin*, 1 Bailey Eq., 492; *White* v. *Chateau*, 10 Barb., 202, which is fully in point. The case was this: The plaintiff, a broker, sued in his own name for goods sold, the owner, Tully by name, being dead. It became material for the plaintiff to prove his interest in the matter to entitle him to maintain the action, and for this purpose he offered to prove, 1st. The deceased owner's (Tully) *verbal* declaration that he had received the broker's guaranty; 2d. His declaration that the broker had made a sale and he had received the money on the broker's guaranty. It was decided that the former declaration not being opposed to the owner's interest, was inadmissible, but that the latter was at variance with his interest and therefore competent. EDWARDS, J., in pronouncing the opinion of the Court in this case, says: "The first question to be considered upon this testimony, is as to how far the admissions of Tully (the owner) are evidence against the defendants; it having been satisfactorily proved that he was dead at the time of the trial. The exception to the general rule as to hearsay testimony is, that where the declarant is deceased, and where it appears that he possessed competent knowledge of the facts, and that his declarations were at variance with his interest, they are admissible in a suit between third persons, *and such declarations need not be in writing* (*Ivat* v. *Finch*, 1 Taunt., 141; 4 Id., 16; 1 Greenl. Ev., §147). The declaration of Tully, that he had received the plaintiff's guaranty, would not be at variance with his interest, but his declaration that he had made a sale and received the money upon the plaintiff's guaranty, was clearly against his interest, for it was an admission that his debt had been satisfied by the plaintiff." 10 Barb., 202, 210 (A. D. 1850). The same case was again determined in 1 E. D. Smith, 493, where the same doctrine was followed. The case of *Coleman* v. *Frazier*, above, goes a much greater length than the case at bar requires us to go. That case was briefly this:

The defendant, a postmaster, was sued for negligence in permitting money to be stolen from the office by one Meigs, between whom and the defendant there was no privity of any sort; Meigs admitted that he stole the money, and the Court sanctioned the reception of the admission, as testimony to charge the defendant, on the ground that "it was the admission of an act committed by the party, against his interest, and subjecting him to infamy and heavy penal consequences, and who was dead at the trial." Says the Court: "The admission of such testimony arises from necessity, and the certainty that it is true from the want of motive to falsify." · In many of its features this case is most strikingly apposite to the one under consideration.

*Hinckley* v. *Davis, supra,* was decided by a court of the highest respectability, and we regard it as being in every respect in point. The action was against a surety on a note. The defense of the surety was that Blood, the principal, had paid the note by keeping the sheep for the plaintiff. It became material to ascertain the price of the keeping. The plaintiff introduced a witness who swore that Blood, while he was keeping the sheep, *said* he was to have only $1 per year for each sheep. It appearing that Blood was dead, the evidence was adjudged rightly received. Per RICHARDSON, Ch. J.: "The admissions of Blood were made at a time when no motive to misrepresent the matter can be conceived. They were admissions against his interest. He is now dead, and cannot be called as a witness, and his admission related to a matter with which he must have been well acquainted." "The evidence results, in such a case, from the improbability of a man's admitting as true what he. knows to be false, against his interest," and the Court cites some of the English cases before referred to in this opinion.. The declarations of Blood were no part of the *res gestae*, for the *res gestae* would be the actual contract between Blood and

the plaintiff. The analogies of the law also favor the reception of the evidence in the case at bar. There are cases where the *admissions* of *strangers* to the suit are receivable. Thus the verbal admissions of a party whom the sheriff permitted to escape, or failed to arrest on civil process, are evidence in an action against the sheriff to show the extent of liability of the party escaping, or not arrested, and this, whether he can or cannot be examined as a witness, and without regard to whether they were made before or after the service of the writ. *Pugh* v. *McRae*, 2 Ala., 393; *Rogers* v. *Jones*, 7 B. & C., 86; *Strong* v. *Wheeler*, 5 Pick., 410, and see 1 Greenl. Ev., § 181, for similar cases.

Our examination and survey of this subject may be thus summed up. This species of evidence being somewhat anomalous in its character, and standing on the *ultima thule* of competent testimony, is not highly favored by the courts, and the tendency is rather to restrict than to enlarge the right to receive it, or at least to require the evidence to be brought *clearly* within *all* the conditions requisite for its reception. From the unbroken current of English and the decided preponderance of American authority, we think the present state of the law is, that verbal declarations are receivable, when accompanied by the following prerequisites: 1st. The declarant must be *dead*. To this we believe the English cases make no exception. Mere absence from the jurisdiction will not answer. *Brewster* v. *Doane*, 2 Hill (N. Y.), 537, and cases; *Moore* v. *Andrews*, 5 Port., Ala., 107. Although by the course of decisions in some of the states, with reference to written entries, &c., absence might possibly be treated as equivalent to death. See 1 Greenl. Ev., § 163, and note; 8 Watts, 77; 1 Smith, L. Cas., 340 (top); as to insanity, *Union Bank* v. *Knapp*, 3 Pick., 96. As, in the case at bar, the declarant was deceased, we need not decide whether *death* is, in all cases, an indispensable condition. We need only say, that pro-

bably the courts would not be inclined to relax the rule so as to dispense with this condition, unless it might be in the case of confirmed insanity.

2d. The next pre-requisite is, that the declaration must have been *against the interest* of the declarant at the time, and that interest must be a *pecuniary* one. That it would have subjected the party to penal consequences is not suffi-cient, although this would add to the weight of the testimony. (*Davis* v. *Lloyd*, 1 C. & K., 275; 11 Cl. & Fin. 85). The conflict of the declaration with the pecuniary interest of the party, must be *clear and undoubted*, as this is the main ground upon which the admissibility of this species of evidence rests.

3d. The declaration must be of a *fact* or *facts* in relation to a matter concerning which the declarant was *immediately* and personally cognizable. 11 M. & W., 773. As the evidence is admitted because the declaration is against interest, it is not indispensable that it should accompany an act, but if not so accompanied it very greatly depreciates its value. Phillipps Ev., vol. 1, p. 310; 1 Greenl. Ev., § 147; *Ivat* v. *Finch*, 1 Taunt., 141; *White* v. *Choteau*, 1 E. D. Smith, 493, and cases *supra*.

4th. In addition, the Court should, upon the circumstances of the particular case, be satisfied that there was no *probable motive to falsify* the fact declared; as where the declaration is made *ante litem motam*, or at a period so remote as to preclude all suspicion that it was manufactured for the occasion. *Gilchrist* v. *Martin*, 1 Bailey Eq., 492, and cases *supra*.

When all of these conditions are met, the evidence is received for what it is worth, and its weight and value depend upon the circumstances of the particular case.

Under the guidance of these principles, as applied to the case at bar, considering the nature of the admissions as being indisputably against the declarant's pecuniary interest,

and involving disgrace if not crime; the time of the admissions being not only *ante litem motam* but before the execution of the bond in suit; the absence of all conceivable motive to falsify; and the impracticability of procuring other evidence touching the same matters, the Court are of opinion that the evidence of the witnesses, White and Coalbaugh, was properly received.

To guard against misapprehension, we desire to say, that it does not necessarily follow that this evidence could have been admitted in an action against the sureties on *the* bond, existing at the time when the admissions in question were made; nor does it follow in all possible cases, that all declarations against interest of a deceased principal are competent testimony for or against sureties. Each case must stand upon its own circumstances, and be judged by the general rules above set forth.

Judgment affirmed.