## WARNER v. BLAKEMAN.

December, 1863.

Modifying 36 *Barb.* 501.

A regular foreclosure, by advertisement, of a wholly void mortgage,— *e. g.*, a mortgage that has been paid and satisfied,—does not cut off the lien of judgment creditors, except, perhaps, to a *bona fide* purchaser of the land under the foreclosure, without notice ; and such judgment creditors are not restricted to proceedings by execution in disregard of the foreclosure, but may proceed by a creditor's suit to reach the purchase money due from the *bona fide* purchaser to the mortgage creditor who made the fraudulent sale.

A creditor, with judgment and execution unsatisfied, filing a bill to set aside a fraudulent conveyance or assignment, may follow the property which was the subject of the fraud into the hands of any person but a *bona fide* purchaser ; and if it has been transferred to a *bona fide* purchaser, &c., he may have a decree for the proceeds against the party who was privy to and profited by the fraud.

If such party has sold the property at an advanced price, he may be held liable for the increased value; but he is not liable for rents and profits.

Hiram W. Warner and John P. Loop brought this action in the supreme court, as judgment creditors of Robert Turner, against Eben Blakeman and others, to set aside two mortgages on land, and the foreclosure of one of them, and subsequent conveyances of the property, on the ground that the two mortgages had been paid, and that the foreclosure was fraudulent as against the plaintiffs.

On March 10, 1853, plaintiffs recovered a judgment against Robert Turner, who then owned the land in Madison county, which is the subject of controversy in this action, and by docketing of the judgment in that county, acquired a lien thereupon.

The premises were then subject to two mortgages—one given by the said Turner and another, to the defendant Blakeman, to secure the payment of one thousand two hundred dollars cash lent; the other, given by the said Turner to Hiram Whedon, conditioned on its face for the payment of three thousand dollars, but in fact given to secure an existing indebtedness to a small amount, and contemplated future advances, and also to indemnify Whedon against certain indorsements, and contemplated future indorsements for the benefit of Turner.

On April 13, 1853, at or before which time Whedon had actual notice of plaintiff's judgment, the balance due from Turner to Whedon was one thousand seven hundred and eighty-two dollars twenty-eight cents, and Whedon's indorsement, to the amount of six hundred dollars, was outstanding.

Transactions were had between the parties on and prior to Feb. 17th, 1854, the result of which was, that on that day Whedon gave up the three thousand dollar mortgage, consenting to rely thereafter solely upon the personal security of Turner for any balance remaining due to him; but, instead of delivering that mortgage to Turner, or acknowledging satisfaction thereof (the same not having, to that time, been recorded,) he executed a formal assignment thereof to the defendant Blakeman without any consideration, Blakeman paying no consideration therefor, none of the debts or obligations for which it had been held as security being transferred to Blakeman, and the latter neither paying nor agreeing to pay the same, nor any of them.

On the same day and prior thereto, Turner made arrangements, by transfers of property and otherwise, in pursuance of which the one thousand two hundred dollar mortgage was paid in full, and in money received from Turner, or upon his order. And on Feb. 26, the said Turner and Blakeman had a settlement of their various transactions, in which a balance was found due to Blakeman, after payment of said one thousand two hundred dollar mortgage, of one thousand one hundred and twenty dollars eleven cents, which they then agreed should be secured only by a distinct and separate security, which was then given to Blakeman by Turner, and Blakeman delivered to Turner both mortgages, as paid and satisfied.

About nine months afterward, a negotiation was had between Blakeman and Turner, resulting in the purchase of the premises by the former, for the price of two thousand dollars, and the latter accordingly executed to Blakeman a deed in which the premises were declared to be subject to both of the before-named mortgages, and at the same time restored the two mortgages to Blakeman's possession, retaining nevertheless, the bond which the one thousand two hundred dollar mortgage was originally given to secure; and in December next ensuing, Blakeman went through the form of a foreclosure of the three thousand dollar mortgage, by advertisement pursuant to the statute, declaring in his notice of sale that two thousand six hundred and seventy-five dollars twenty-six cents, was due on the said mortgage, and transmitted that notice, by mail, to the plaintiff's herein. At the sale made pursuant to the advertisement, Blakeman bid off the premises himself, at the price of eight hundred dollars, and entered into possession.

The object and purpose of this form of foreclosure and sale was to cut off and extinguish the lien of the plaintiff's judgment upon the premises.

The value of the premises at the time of the sale was one thousand two hundred dollars; but afterward, and before the commencement of this action, Blakeman sold part of the said premises to *bona fide* purchasers, receiving money in part payment, and a bond and mortgage on the premises sold, to secure the other part of the purchase money, and had contracted to sell the other part of the premises, but the contract had not

been carried into execution by conveyance and full payment. The aggregate price at which he sold exceeded the value at the time of the attempted foreclosure.

*The supreme court,* on a former hearing were of opinion that, although the three thousand dollar mortgage was satisfied, and its foreclosure was a fraud, the necessity to apply to equity to set it aside showed that the foreclosure sale was valid until set aside; and that a purchaser in good faith must be protected; that Blakeman's title was good as to the mortgagor who assented to the foreclosure; and that Cameron *v.* Erwin, 5 *Hill,* 272, could not apply where the mortgagor looked on without objection on a sale to a *bona fide* purchaser. That as to the one thousand two hundred dollar mortgage, whether it be regarded as a lien or as extinguished by the purchase. plaintiffs must be allowed the amount unless it had been paid. As the court were of opinion that the findings did not show whether the latter mortgage had been paid or not, they reversed the judgment of the referee who had decided that the purchaser took no better title than Blakeman, and sent back the cause for further examination on a new trial. Reported in 36 *Barb.* 501.

On the second trial the above facts were found; and the court gave judgment for plaintiff on the referee's report.

Defendants appealed.

———— ————, for defendants appellants,

*N. Foote,* attorney for plaintiffs, respondents.

BY THE COURT.—WOODRUFF, J. [After stating the above facts.]—Upon these facts there are two principal questions.— First, is the lien of the plaintiffs' judgment extinguished ? and, second, if not, to what relief, if any, are they entitled in this action ?

The transaction in question was a fraud upon the plaintiffs. The facts constitute fraud, and no less so because the referee in his findings has not employed the word "fraud" or "fraud-ulently," in order to describe or characterize them.

A mortgage that never was a security in the hands of the

defendant, Blakeman, as. against the plaintiffs, for any thing; which had been given up by Whedon, the only party in whose hands it was a security, after it had to his satisfaction answered the purposes for which it was given; which had again been given up by Blakeman himself, as paid and satisfied, to the mortgagor, is set up nine months afterward for the fraudulent purpose of cutting off the plaintiffs' lien upon the mortgaged premises. Not only so, but, manifestly in order to deceive the plaintiffs, it is falsely alleged in the notice of sale that there is due thereon nearly three thousand dollars, a sum greater than the value of the premises; and this, in order that Blakeman may purchase the premises, divested of the plaintiffs' lien, for which purchase he negotiated before the foreclosure was commenced.

Blakeman, Whedon and Turner, appear to have regarded this mortgage as a formal paper that could be handed from hand to hand, and, however often satisfied by the accomplishment of all the purposes for which it was delivered, to have new efficacy at each successive delivery as a continuance of its original lien, no matter what intermediate rights had accrued to others. And, after it had been given up to the mortgagor as paid and satisfied, and had so remained for nine months, they conceive the idea that it may be used, not as a security for a new debt, but for the mere purpose of the false representation that it is a subsisting, valid instrument, by means whereof the plaintiffs, deceived into submission to the apparent lien, may be deprived of their security.

It would not be creditable to the administration of justice if such a scheme could be successful; and it is clear, I think, that the rules of law and principles of equity are not ineffectual for its prevention.

Nor do I think any extended discussion of the subject necessary. It is the just and proper pride of our matured system of equity jurisprudence that fraud vitiates every transaction; and however, men may surround it with forms, solemn instruments, proceedings conforming to all the details required in the laws, or even by the formal judgment of courts, a court of equity will disregard them all, if necessary, that justice and equity may prevail.

No uncertain or difficult questions of equity are, however, involved in this case. The mortgage in the hands of Blakeman, when he attempted to foreclose it, was mere waste paper. It had long been *functus officii*. The power of sale contained therein was at an end.

Unless, then, the form of a foreclosure, which Blakeman set on foot for the fraudulent purpose stated, gave him some new rights, the mortgage, and what he did under it, remain as to him but waste paper still.

What says the statute? Simply and only that a sale duly advertised and conducted, made to a purchaser in good faith, shall be equivalent to a sale under a decree of foreclosure in equity. *L.* 1844, ch. 346, § 4; 3 *R. S.* 5th ed. 861, § 8.

I have no occasion, perhaps, to say, that, upon the facts found in this case, no court of equity would hesitate to open a decree and set aside a purchase by a complainant. Here there is no decree to be opened; the plaintiffs' only resource is an action. There is no occasion to consider this because the statute declaring the effect of the advertisement and sale to Blakeman, gives no ground of claim to him, that he acquired any rights thereby. He has no color of pretense to be a *bona fide* purchaser.

The case of Cameron *v.* Irwin, 5 *Hill*, 272 justifies a doubt whether, under circumstances such as these, the power of sale having been extinguished by payment of the mortgage, even a *bona fide* purchaser would have acquired title. But the defendant, Blakeman, is no such purchaser. Indeed, I greatly doubt whether the holder of the mortgage, himself, directing the foreclosure for his own benefit, can ever become the purchaser so as to preclude inquiry into any question of antecedent fraud, so long as the property remains in his hands. But here, every step taken by Blakeman is infected by the false and fraudulent endeavor to cut off the plaintiffs' lien by artifice and misrepresentation, using the forms of law to conceal the truth and effect the object.

This apparently harsh language is, I think, not an exaggerated statement of the true aspect of the case in a court of equity. It may be, that Blakeman and Turner were blinded by interest or misled by the want of correct information, as to

the effect of their acts, and, in a sense, they may have honestly supposed that it was not wrong to try to cut off the plaintiffs' judgment without paying it; but the transaction must be tested by its own merits or demerits, as the case may be.

My conclusion is, that, even without invoking those principles of equity which, were the language of the statute less explicit, would forbid the acquisition of title by Blakeman to the prejudice of the plaintiffs by such means, the statute gives no effect to the foreclosure, whatever, in favor of the fraudulent party, and that, as to Blakeman, the lien of the plaintiffs' judgment is, in equity, wholly unimpaired.

2. To what relief, if any, were the plaintiffs entitled in this action ?

It is suggested, that, if the foreclosure and purchase by Blakeman are not effectual to cut off the lien of the plaintiffs' judgment, there was no foundation for this action, because the plaintiffs might proceed to sell by execution, and collect their judgment out of the real estate.

To this, there are two answers, either of which seems to me sufficient,—first, the proceedings for the foreclosure were regular ; there is nothing on the face of the mortgage or·of the proceedings to indicate that the title acquired by Blakeman was not entirely free of the plaintiffs' lien. It was the clear right of the plaintiffs to file their bill to remove this apparent legal impediment, and practically fatal hindrance, to the collection of their judgment. The practice of the court to entertain such bills for the benefit of judgment creditors to set aside fraudulent conveyances or assignments, petitions, mortgages and collusive judgments, is familiar to the courts and to counsel. Second, it is not clear, that those who subsequently purchased from Blakeman in good faith, without notice of any fraud, are not to be regarded as within the equity of the statute which makes the title of a *bona fide* purchaser at the sale equivalent to that acquired under a decree. That view of these rights was taken in the court below, and is not inconsistent with the grounds upon which it is denied that Blakeman acquired any title which can avail him against these plaintiffs, and, notwithstanding the doubt expressed in Cameron *v*. Irwin, *ubi supra*, whether even a *bona fide* purchaser would acquire

title, there was still ground for invoking the jurisdiction of a court of equity as to those purchasers, to the end, that, if they were regarded as entitled to protection as *bona fide* purchasers, the unpaid purchase-money might be held to stand subject to the plaintiffs' lien in the place of the land they had so purchased.

The question then recurs, to what relief are the plaintiffs entitled ? The answer has been, I think, correctly given in the supreme court. It is, in effect, that, as to Blakeman, they are entitled to subject to their lien all the proceeds of the sale of the lands upon which their judgment was a lien. This does to him no wrong, and it only gives to the plaintiffs their equitable right. It takes from Blakeman the fruits of his fraud, and it gives to the plaintiffs that which, but for the fraud, they could obtain by enforcing their lien. In short, the defendant, by device held fraudulent as to the plaintiffs, has converted into money, bonds and mortgages, and an executory contract of sale, the subject-matter in contest ; and, in equity, that into which the land has been by such means converted, stands, in the hands of the fraudulent party, in the place of the land itself.

This principle, too, is familiar, and is acted upon daily in administering equitable relief to judgment creditors, impeaching fraudulent assignments and transfers of real and personal estate alike.

No right, legal or equitable, of the purchasers is affected by subjecting the purchase-money to the plaintiffs' claims, for in the destination of that money they have no interest, and there is, therefore, on the merits, no equitable ground whatever for their appeal ; and Blakeman can not complain that the court below gave efficacy to his own conveyances and contracts with the other defendants, suffering them to operate in their favor as he intended, and still insists, they should.

The very able and ingenious argument submitted on behalf of the appellants rightly states, that a judgment creditor has simply a lien on the land, which can ripen into title only by a sale and conveyance. But the case relied upon, Collumb *v.* Read, 24 *N. Y.* 505, 515, by no means shows, that a court of equity will not arrest the proceeds, where the fraudulent con-

veyance has been so far effectual, as, in favor of a *bona fide* purchaser, to withdraw the land itself from the operation of the lien.

The legitimate result of the appellants' argument is this : " The judgment creditors have a lien on the land ; if, by a fraudulent device through the forms of law, I can clothe *bona fide* purchasers with a title, I can hold the proceeds or fruits of the fraud, and set the creditors at defiance." I think the rights of creditors can not be defeated by such means, and that the power and jurisdiction of courts of equity are efficient to prevent it.

It is true, that, ordinarily, the proper and the adequate relief is to declare the fraudulent conveyance void. This is all that is necessary for the plaintiffs' protection or redress. It does not follow, that, where the intervening right of a *bona fide* purchaser renders that decree inappropriate, the plaintiffs are remediless, and the defendants are to profit by their own wrong.

The rule, where judgment creditors acquire a lien upon real estate, and file a bill to reach it, is clearly and comprehensively stated in Cook *v.* Smith, 3 *Sandf. Ch.* 333, 338 : " A creditor who, by his judgment in respect of real estate, his execution issued as to movables, and his execution returned as to things in action, is entitled to file a bill to set aside a fraudulent conveyance, sale or assignment, may follow the proceeds of the property transferred, into the hands of any number of intermediate assignees, and until the property or its proceeds lodge in the hands of a *bona fide* creditor who has received it and applied it upon his debt, or of a *bona fide* purchaser without notice of the fraud. "

To the objection that a receiver should not have been appointed, and Blakeman directed to convey to him the lands not yet conveyed to the purchasers, it is, I think, sufficient to say, that the power of the court is ample, where the appointment of a receiver is necessary in order to carry into execution and enforcement the equitable rights established by the decree. No doubt, that, after the decree in this case had declared the plaintiffs to have a valid subsisting lien upon the land by virtue of their judgment, unimpaired by the attempted foreclosure,

but nevertheless subject to the rights acquired by the subsequent purchaser by his contract with Blakeman,—the plaintiffs might have issued execution, and sold that portion of the land subject to such contract; but, the court having jurisdiction of the whole subject of the relief, and a receiver being eminently proper for the collection of the bonds and mortgages owing by the purchasers of other portions of the land already conveyed by Blakeman, there was great reason for acting distinctly in affirmance of the contract of sale, and requiring the purchaser who had not received a deed to pay to the receiver; and yet this could not be done in justice to such purchaser, without assuring to him a conveyance when his payments were completed, and this required that that the court should require Blakeman to convey to the receiver.

It is an error to say that the plaintiffs were, in case of such a contract, shut up to the exercise of their purely legal rights, to wit, a sale and execution, subject to the contract; they were, in this respect, in the same condition as a judgment creditor, whose judgment is recovered after a *bona fide* contract of sale has been made—both hold judgment liens, subject to the contract. Of such a creditor, DENIO, J., says, in Moyer v. Hinman, in this court, 13 *N. Y.* 180, 184: " The creditor had, at *law*, the right to acquire the legal title to the land by means of a sheriff's sale, and a purchase by himself; but *in equity*, his rights were limited to the future payments to be made by the plaintiff " (the purchaser).

These payments the plaintiffs here in a court of equity have secured, and this is the only mode in which the purchaser could be also properly protected, and the rights of the plaintiffs enforced if the purchaser should not perform his contract.

I do not find any thing in the decree appealed from, which requires Blakeman to pay over the rents and profits of the premises, or value of their use while in possession, though the argument for the appellant seems to assume that it is so adjudged. The decision in Collumb v. Read, 24 *N. Y.* 505, 515, would condemn such a requirement, since, notwithstanding the plaintiff's lien, the judgment debtor might have enjoyed such rents until a sale or bill filed to reach them.

But in regard to the increased value of the property since the attempted foreclosure the decree is right. If the property had been retained by Blakeman in his own hands, the decree would have declared that foreclosure void and inoperative as against the plaintiffs; and, in that case, their lien, always good as against Blakeman, would have attached to whatever enhanced value had accrued to the land, and that value would have been secured to the plaintiffs.

That is awarded to them down to the time of the respective sales by Blakeman, and no substantial reason can be given why Blakeman, and not the plaintiffs, is entitled to it.

I think the judgment must be affirmed.

All the judges concurred, except GROVER, J., who did not vote, and MILLER, J., absent.

Judgment affirmed, with costs.