adopted and the bank account opened before paying the purchase money for the purchase of this real estate. Upon this testimony, I fail to see that this was anything more than an arrangement between these two individuals to purchase this property in common, and that, under the provisions of the Revised Statutes, the estate granted was a tenancy in common, and the title to the property was held by the grantees as tenants in common. That the parties adopted a joint name in dealing with the property, and that they invested the rents or profits realized from the real estate investments by purchasing securities in their joint name, or by jointly loaning the money to others, is not at all inconsistent with the title by which they held this real property. The small amount of existing debts—less than $100— which had been incurred in the management of the property is undoubtedly the joint obligation of the two parties in whose name and for whose benefit the indebtedness had been incurred. There was nothing shown that would justify a court of equity in changing the character of the title of this real estate. The rights of creditors are not in question. The parties are solvent and able to answer for all their obligations, and conceding that there was an agreement which contemplated a joint adventure, and applying the rule established in this state, that:

"In the absence of any agreement, express or implied, between the partners to the contrary, partnership real estate retains its character in realty, with all the incidents of that species of property, between the partners themselves. * * * The working out of the rights which grow out of the partnership relation does not seem to require that the character of the property should be changed until the occasion arises for a conversion, and then only to the extent required." Darrow v. Calkins, 154 N. Y. 503, 49 N. E. 61, 48 L. R. A. 299, 61 Am. St. Rep. 637.

—It would appear that, the legal title of the parties being that of tenants in common, the incidents of that tenancy were preserved, and that either of the tenants in common had the right to have the property partitioned.

Objections are made to the form of the interlocutory judgment, but we think them frivolous.

It follows that the judgment appealed from must be affirmed, with costs. All concur.

(83 App. Div. 419.)

CONTINENTAL NAT. BANK v. MOORE et al.

(Supreme Court, Appellate Division, First Department. May 15, 1903.)

1. LIFE POLICY—ASSIGNMENT BY INSOLVENT DEBTOR—CREDITOR'S ACTION TO SET ASIDE—PROOF OF INDEBTEDNESS—SUFFICIENCY.

In an action by a bank, as creditor of a decedent, to set aside as fraudulent an assignment of two policies of insurance on his life to his wife and daughter, it appeared that deceased was a note teller in plaintiff's employ; that it was his duty to collect drafts deposited for collection; that he made false entries in the books, crediting himself with $12,000, purporting to consist of drafts received for collection; that no such drafts were deposited, and that he was not charged with their receipt; that he admitted to the officers of the bank, before the assignment, that he had appropriated to his own use $12,000, and was then insolvent. *Held* to show his indebtedness to the bank.

**2. SAME—EVIDENCE—ADMISSIBILITY—LETTER BOOK.**

A letter book of the bank, in which were copied letters of advice inclosing drafts forwarded for collection, was not kept by deceased, but it was shown that the duty of writing such entries devolved on him, and that he had the supervision, if not actual charge, of this branch of the business. *Held*, that the book was competent for the purpose of showing that it contained no entry relating to the forwarding of the drafts for collection.

**3. SAME—ADMISSIONS AGAINST INTEREST.**

Prior to his assignment of certain policies of insurance on his life, deceased admitted to the officers of the bank by which he was employed that he had appropriated money of the bank to his own use. *Held* admissions against his interest, and competent as against the voluntary assignee of the policies, in an action by the bank, as a creditor, to set the assignment aside as fraudulent.

**4. SAME—ASSIGNMENT IN CONTEMPLATION OF SUICIDE.**

Deceased admitted to the officers of the bank by which he was employed that he had appropriated money of the bank to his own use. Twelve days thereafter, and subsequent to his arrest, he assigned two policies of insurance on his life to his wife and daughter. The policies were prior thereto payable to his estate, and the assignment recited no consideration. Ten days afterwards, and pending the examination of criminal charges against him, he committed suicide. *Held* to justify the inference that the assignment was made in contemplation of suicide, and in order to put the insurance out of reach of creditors.

**5. SAME—INSOLVENCY OF INSURED—EVIDENCE.**

The fact that no letters of administration were taken out on the decedent's estate tended, in connection with the other facts, to show that he was insolvent.

**6. SAME—EXTENT OF CREDITORS' LIEN—AMOUNT SUBJECT TO DEBTS.**

Where an attempted assignment of an insurance policy was set aside as fraudulent as against the insured's creditors, and the insurance had become payable by the death of insured before the judgment annulling the transfer, the entire insurance inured to the benefit of creditors, and not merely the cash value thereof.

**7. SAME—FORM OF JUDGMENT—INTERLOCUTORY JUDGMENT—PRACTICE.**

In an action by a creditor to set aside as fraudulent an assignment by a deceased debtor of certain policies of insurance on his life, the insurance money was deposited by the insurer with a trust company to abide the action. No letters of administration were issued on the estate of the deceased, and no proceeding was pending in the Surrogate's Court. *Held* that, if it was proper for the Supreme Court to hold and administer the fund, an interlocutory judgment should have been entered directing the appointment of a referee to advertise for and take proof of the claims of creditors and report thereon, and that the validity of plaintiff's claim should be first determined and finally adjudicated by the court before the trust company should be required to pay over the money, except the costs of the action.

Appeal from Special Term, New York County.

Action by the Continental National Bank, in behalf of itself and all other creditors of J. Prevost Mason, deceased, against Nettie H. Moore and another. Judgment for plaintiff, and defendant Nettie H. Moore appeals. Affirmed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

David McClure, for appellant.

John L. Cadwalader, for respondent.

LAUGHLIN, J.   The plaintiff, claiming to be a creditor of J. Prevost Mason, deceased, brings this action in behalf of itself and all other creditors, pursuant to the provisions of section 7 of the Personal Property Law (chapter 457, p. 509, Laws 1897), to have an assignment of two policies of insurance upon the life of the decedent to his wife declared void as against his creditors upon the ground that at the time of making the same he was insolvent, and that the assignment was made in fraud of the rights of his creditors.   The decedent for many years prior to the 12th day of January, 1901, was a note teller in the employ of the plaintiff, his salary at that time being $1,800 per annum. The plaintiff contends that on or prior to that day he misappropriated $12,000 of its funds.   At that time he held two policies of insurance upon his life, one for $8,000 and another for $2,000, payable to his executors, administrators, or assigns.   On the 12th day of January, 1901, the decedent, in the presence of his wife, admitted to officers of the plaintiff that he had taken funds of the bank to the extent of $12,000, used the money for the support of his family, and in effect that he was insolvent; and on the following day made a like admission, in the presence of his wife, to officers of the defendant surety company, which was surety for his conduct to the bank.   On the 16th day of the same month he was arrested for the defalcation, and admitted to bail on the 19th pending his examination before a United States commissioner.   Three days later the insurance company made a notation upon each of the policies of insurance as follows:   "At the request of the insured this policy is made payable to Nettie H. Mason, his wife, if she is living at the time of the death of the insured, otherwise to Grace E. Mason, his daughter."   On the 1st day of February thereafter, he committed suicide by shooting himself in his bedroom at home.   Between the date of the assignment of the policies and his death no premium fell due upon either, and his wife paid none of the premiums.   The surety company paid $7,000 to the bank, and asserts the right to be subrogated to that extent to the claim of the bank, and for that reason was made a party defendant.   The insurance company was also joined as a party defendant; but subsequently, upon its motion, the action was discontinued against it upon its paying the amount of its liability into the City Trust Company of New York, to the credit of and to abide the event of this action.

The appellant urges a reversal of the judgment setting aside the assignment of the insurance policies to her, and directing the payment of the proceeds thereof to the creditors of the decedent, upon three grounds, which will be considered in the order stated, viz.:   First, that it has not been shown that the plaintiff is a creditor of the decedent; second, that prejudicial errors were committed in the reception of evidence; third, that the plaintiff has failed to show fraud or want of consideration for the assignment.

1. The indebtedness of the decedent was shown both by his declarations and by records of the bank kept by him or under his direction. It was his duty, among other things, to collect drafts of customers of the bank deposited for collection, and payable elsewhere than in the city of New York.   It was shown that he made false entries in the books of the bank, crediting himself with $12,000, purporting to con-

sist of four out of town drafts received for collection.   It appears that the customers of the bank from whom, according to his entries, the drafts were received, deposited no such drafts for collection, and he was not charged with the receipt of the drafts for which he thus gave himself credit.   This evidence, which was all manifestly competent, established prima facie that the entries crediting him with these drafts were false and fictitious, and were made for the purpose of apparently balancing the account and covering up his misappropriation of $12,000 by the false credit of a like amount.

2. As a further item of proof on this subject, a letter book of the bank was received in evidence for the purpose of showing that it contained no entry relating to the forwarding of these drafts for collection. This letter book was not kept by the decedent, and it was received in evidence under appellant's objection and exception.   It appeared that according to the usual course and custom of the plaintiff, when drafts were forwarded for collection, they were inclosed with letters of advice, which were copied in the letter book.   The duty of writing such entries devolved upon the decedent, and he had the supervision, if not actual charge, of this branch of the business.   In these circumstances we think the evidence was competent; but, even if it were not, its reception does not constitute prejudicial error, for, as has been seen, the defalcation was shown without it.   The decedent's admission that he had appropriated to his own use and spent in the support of his family $12,000 of the plaintiff's funds, and was then without property, was received under objections and exceptions duly taken by the appellant.   This evidence was clearly competent upon the issue of fraud, the declarations having been made before the assignment and in the presence of the appellant, and therefore it was properly received.   Moreover, these declarations constituted admissions against the interest of the decedent, and were therefore evidence of his indebtedness to the bank as against the voluntary assignee of the insurance policies.   1 Greenleaf on Evidence (Ed. 1899) § 147; Stephen's Digest (Beer's Ed.) arts. 25, 28; White v. Chouteau, 10 Barb. 202; County of Mahaska v. Ingalls, 16 Iowa, 81.

3. The assignment of the policies was apparently voluntary.   No consideration was recited, and the circumstances under which it was made fairly justify the inference that it was made in contemplation of the suicide, and for the purpose of putting the insurance beyond the reach of his creditors.   The decedent was married, and his daughter, to whom, in the event of the death of his wife, he finally directed that the policies should be paid, had been born before either of the policies had been taken out.   One of the policies was issued in 1881, and the other in 1888, and both were originally made payable to his estate, and so remained until after the discovery of this defalcation and his arrest therefor.   Pending the examination of the criminal charges against him, he ordered the change of beneficiaries and took his own life.   These events occurred in such rapid succession that in the absence of any other explanation they fairly justify the inference that the decedent, contemplating the act which he shortly thereafter committed, knew that if the policies remained payable to his estate the insurance would go to his creditors, and for the purpose of

averting that, and leaving them without redress, he directed the change of beneficiary. The fact that no letters of administration have been taken out upon his estate tends, with the other facts, to show his insolvent condition.

The appellant finally contends that the judgment should in any event be modified so that the creditors will receive only the cash value of the insurance policies at the time of the alleged assignment. The cash value of one of the policies is shown, and it appears that the other had a cash value, but the figures are not given. The appellant relies principally upon cases which arose under the bankruptcy act, but they are not in point, for the reason that subdivision 5 of section 70a of the bankruptcy act, Act July 1, 1898, c. 541, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3451] expressly provides that the bankrupt may pay or secure to the trustee the cash value of any insurance policies, payable to him or his estate or representatives, within 30 days after the cash surrender value thereof has been ascertained, and continue to hold, own, and keep the policies free from the claims of creditors, and, in the event of his failure to secure or pay to the trustee such cash value within the time specified, the policy shall pass to the trustee as assets. This provision conferred upon the bankrupt rights which he would not otherwise have in this state, where such policies of life insurance are not exempted from the claims of creditors. Steele v. Buel, 44 C. C. A. 287, 104 Fed. 968. If these policies had remained payable to the estate of the decedent, of course the insurance could be reached by his creditors. The attempted transfer being set aside as fraudulent and void as against the creditors, and the insurance having become payable by the death of the decedent before the judgment annulling the transfer, it would seem both upon principle and authority that, the full value of the policy having become fixed by his death, the entire insurance inures to the benefit of the creditors, and not merely the cash value thereof. Stokes v. Cowan, 29 Beav. 637; Schondler v. Wace, 1 Campbell, 487; McKown's Estate, 198 Pa. 96, 47 Atl. 1111; Catchings v. Manlove, 39 Miss. 655; Ionia Co. Savings Bank v. McLean, 84 Mich. 625, 48 N. W. 159.

The case is not, we think, distinguishable in principle from those holding that, where a transfer of property made by a debtor is set aside on the ground of fraud at the instance of his creditors, their rights attach, not merely to the value of the property prior to the assignment, but to the property itself, including appreciation or increase in value. Gillett v. Bate, 86 N. Y. 87; Warner v. Blakeman, 4 Abb. Dec. 530.

We do not approve of the form of judgment that has been entered in this case, but, inasmuch as the appellant is not interested in that question, her claims not being sustained, the regularity of the judgment as to form is not before us; nevertheless we should point out the proper practice in such cases. The statute contemplates that the property recovered in an action such as this shall either be administered by the court for the benefit of all creditors of the decedent, or paid into the Surrogate's Court, to be there administered according to law. It is doubtless discretionary with the court whether to administer the property itself or hand the administration over to the

Surrogate's Court. As has been seen, no letters of administration have been issued on the estate of the decedent, and consequently there is no proceeding pending in the Surrogate's Court. It was therefore, perhaps, proper for the court to hold and administer the fund, but in doing so we think an interlocutory judgment should have been entered directing the appointment of a referee to advertise for and take proof of the claims of creditors and report thereon. See Nat. Tradesmen's Bk. v. Wetmore, 124 N. Y. 241–254, 26 N. E. 548. Instead of that, this judgment appoints a receiver, to whom appellant is directed to deliver the policies, and the trust company is directed to pay the proceeds of the policies ratably to the plaintiff, the surety company, "and to such other creditors as shall after six weeks' advertisement in the New York Law Journal appear and prove their claims before said receiver and contribute to the expenses of this action." It would seem.as though the validity of the claim should be first determined, and be finally adjudicated by the court, before the trust company should be required to pay over the money, except the costs of the action.

It follows that the judgment should be affirmed, with costs. All concur.