EDWIN GOULD, on Behalf of Himself and All Other Creditors of F. AUGUSTUS HEINZE, Deceased, Respondent, *v.* LIDA M. FLEITMANN, Individually and as Administratrix, etc., of F. AUGUSTUS HEINZE, Deceased, Appellant, Impleaded with WALTER A. FULLERTON, as Administrator, etc., of F. AUGUSTUS HEINZE, Deceased, and as Guardian of the Property of F. AUGUSTUS HEINZE, JR., an Infant, Defendant.

First Department, May 2, 1919.

**Fraudulent transfer — action under section 19 of Personal Property Law by creditor of deceased insolvent debtor to set aside assignments of insurance policies — necessity that plaintiff be judgment creditor — fact that policies did not have cash value immaterial — rule that fraud must be brought home to assignee as well as to assignor not applicable — complaint stating cause of action in equity.**

In an action under section 19 of the Personal Property Law it is not essential that the plaintiff should be a judgment creditor. He stands in the place of the administrator.

Even in the ordinary judgment creditor's action the issuance and return of execution is not essential if it be impossible to issue execution as in the case at bar.

In an action under section 19 of the Personal Property Law by a judgment creditor of a deceased insolvent debtor against the sister of the judgment debtor, she having been appointed his administratrix, to set aside assignments of insurance policies by the judgment debtor to the defendant, it appeared that said policies, with one exception, were payable to the

insured or to his executors, administrators or assigns and that prior to said assignment the insured had borrowed the full cash or surrender value of each policy.

*Held*, that said assignments were made while the insured was insolvent and for the purpose of placing the proceeds of the policies beyond the reach of his creditors and, hence, should be set aside and the money received by the defendant paid to the administratrix of the insured with interest from the date of its receipt.

Said assignments cannot be sustained upon the ground that they are to be treated either as a payment or as security for sums owing to the defendant by her brother or upon the further ground that as his creditor she had an insurable interest in his life, there being no connection between the dealings by the defendant with the insured and the assignments of the policies.

The fact that the policies did not have a cash value when the assignments were made is of no importance.

The rule that to set aside a conveyance as fraudulent the fraud must be brought home to the assignee as well as to the assignor has no application to voluntary conveyances without consideration.

An objection in such a case that the cause of action alleged was not an equitable one even if good would merely affect the mode of trial and would not require or justify the dismissal of the complaint.

The plaintiff, having sued to recover money belonging to the estate of his debtor, the cause of action is equitable.

SMITH, J., dissented, with opinion.

APPEAL by the defendant, Lida M. Fleitmann, individually and as administratrix, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 7th day of January, 1918, upon the report of a referee appointed to hear and determine the issues.

*Joseph M. Proskauer* of counsel [*Charles F. Bailey* with him on the brief; *Stephen A. McIntire*, attorney], for the appellant.

*Clarke M. Rosecrantz* of counsel [*Ralph Royall* with him on the brief; *Sullivan & Cromwell*, attorneys], for the respondent Gould.

*James A. Leary*, for the respondent Fullerton, as administrator, etc.

Judgment affirmed, with costs, on opinion of the referee.

Present — CLARKE, P. J., DOWLING, SMITH, SHEARN and MERRELL, JJ.; SMITH and MERRELL, JJ., dissented.

The following is the opinion of the referee:

CHARLES F. BROWN, Referee:

The policies of insurance which were assigned by F. Augustus Heinze to his sister, the defendant Lida M. Fleitmann, were issued by the following companies, for the amounts and on the dates following: Equitable Life Assurance Society January 15, 1895, $50,000; New York Life Insurance Company, November 19, 1902, $100,000; Manhattan Life Insurance Company, October 29, 1895, $50,000; Manhattan Life Insurance Company, July 31, 1897, $50,000; Northwestern Mutual Life Insurance Company, June 4, 1906, $25,000.

With the exception of the Northwestern Company the policies were all by their terms payable to the insured or to his executors, administrators or assigns.

The policy in the Northwestern Company was made payable to such beneficiary or beneficiaries as the insured should thereafter nominate under the contract.

The assignments of these policies were made on March 29, 1912, and thereafter and up to the time of his death, which occurred on November 4, 1914, all the premiums upon said policies were paid by Heinze as they fell due.

Mrs. Fleitmann was duly appointed administratrix of Heinze's estate and collected from said insurance companies upon said policies the sum of $218,664.44. In an accounting in the Surrogate's Court of Saratoga county she refused to include such sum among the assets of Heinze's estate, upon the ground that the policies were her property and the proceeds therefrom belonged to her.

Thereafter this action was commenced. It is brought under and pursuant to section 19 of the Personal Property Law (Consol. Laws, chap. 41; Laws of 1909, chap. 45) by the plaintiff, who was a judgment creditor of Heinze at the time of his death, having recovered in the Supreme Court of this State on October 15, 1914, a judgment for $1,264,588.91 upon a promissory note bearing date July 8, 1907, and payable with interest on January 8, 1908.

That judgment was affirmed upon appeal to the Appellate Division and remains wholly unpaid. (*Gould* v. *Fleitmann*, 172 App. Div. 950.)

It is not essential in an action under the provision of the

statute cited that the plaintiff should be a judgment creditor. He stands in the place of administrator. (*Harvey* v. *McDonnell*, 113 N. Y. 526.)

Even in the ordinary judgment creditor's action the issuance and return of execution is not essential if it be impossible to issue execution as in the case at bar. (*National Tradesmen's Bank* v. *Wetmore*, 124 N. Y. 241.)

Subsequent to the commencement of this action Mrs. Fleitmann was by the surrogate of Saratoga county, who had jurisdiction over the estate of the deceased, removed as administratrix, and the defendant Walter A. Fullerton was appointed administrator in her place, and thereafter he was made a defendant in this action.

Mr. Fullerton appears in the action as such administrator and also as the general guardian of Frederick A. Heinze, an infant and only child of said F. Augustus Heinze. As administrator he seeks to have the assignments set aside as fraudulent and joined in the demand for judgment made in the complaint. As general guardian he has denied the allegations of fraud contained in the complaint and on the trial attempted to prove that the assignments were made to Mrs. Fleitmann in trust for said infant.

There is absolutely no testimony to sustain the latter claim, and no further reference will be made to it.

Prior to the assignments of said several policies of insurance Heinze had borrowed from the said several companies issuing such policies, except the Northwestern Mutual Life Insurance Company, the full cash or surrender value of each policy, and at the time of the assignments to Mrs. Fleitmann, the said policies were held by the companies making such loans as security therefor.

The policy issued by the Northwestern Mutual Life Insurance Company had no cash or surrender value.

Subsequent to the assignments to Mrs. Fleitmann Heinze borrowed from said companies further sums equal to the additional cash value which accrued upon such policies by the payment of premiums thereon, and in respect to such loans Mrs. Fleitmann joined with her brother in the notes or obligations given to the companies making such loans and in the assignments thereof or the security therefor.

The history of these several loans is set forth in defendants' Exhibits 35, 41, 42.

It is sufficient to say that at the time the assignments were made the policies assigned had no cash or surrender value, and that such value as was the result of the payment of premiums after March, 1912, was obtained by Heinze from the companies through loans made to him and secured by the assignments of the policies, in which assignments Mrs. Fleitmann joined.

The defendant Mrs. Fleitmann has testified to a series of transactions between herself and her brother beginning in 1896 and continuing until his death, whereby she gave to him money to invest for her in speculative enterprises and which, considering the amount of the original contribution, resulted in large profits to her, a part of which was paid to her in cash, a part was left with her brother for reinvestment, and a part was a loan to him, for which he was indebted to her at the time of the assignments and also at his death.

It is sought by Mrs. Fleitmann to sustain the assignments on the ground that they are to be treated either as a payment or as security for the sums owing to her by her brother, and upon the further ground that as his creditor she had an insurable interest in his life.

The assignments cannot in my opinion be sustained upon either ground.

There is no connection between the dealings to which Mrs. Fleitmann testified and the assignments of these policies. The assignments of the policies were an independent act by Heinze, and the validity thereof must be determined without any reference to the dealings he had with his sister in respect to the investment of her money.

The assignments were not made either to pay or to secure any debt which Heinze owed to the plaintiff, and no such purpose was mentioned by either of the parties at any time in connection with the assignments.

Mrs. Fleitmann testified that all that was said by her brother to her about the assignments was that "he told me he wanted to make me beneficiary of his life insurance policies."

He did not tell her the amount of the policies or what company had issued them, and she did not see them until after his death.

After the assignments were made, when her brother desired to borrow money upon the policies, the papers necessary to be signed by Mrs. Fleitmann were brought to her and she signed them as requested without question.

It is evident from this statement of the transaction that the assignments were not made in payment of any debt due to the defendant Mrs. Fleitmann. Whatever Heinze's indebtedness was to Mrs. Fleitmann it was the same after the assignments as before. She gave up nothing and surrendered no part of the debt due her.

Furthermore the indebtedness existing at the time the assignments were made appears to have been paid in full during the years 1912 and 1913 out of royalties payable by the American Smelting and Refining Company to the Miners Smelting Company, as set forth in defendant Fleitmann's Exhibits 18, 19, 20 and 21.

There is no ground for any claim that the assignments were made to secure any indebtedness to Mrs. Fleitmann.

As already stated, there was no mention of such a purpose between the parties when the assignments were made, or at any other time.

The testimony in my opinion admits of but one conclusion, and that is the assignment of the policies by Heinze was a voluntary act on his part for the purpose of vesting in his sister the right to receive the proceeds at the maturity of the policies or at his death if he should die before they matured.

That he was contemplating such a transfer for the purpose of putting the policies beyond the reach of his creditors is plain from the testimony of Mr. Levy.

He doubtless anticipated that if his sister was made the beneficiary his control over the policies would not be interfered with in any respect, and that this anticipation was realized is shown by the loans obtained by him upon the policies during the years 1913 and 1914 with his sister's consent.

It is contended, however, that as the policies had no cash value at the time of the assignments the transfer cannot be deemed to be fraudulent as no property was transferred to which the creditors would have been entitled.

The argument is, that as the policies had no value when assigned, the creditors of the assignor were not deprived of any

property to which they were entitled, and if the premiums were paid by the insured after the assignments the creditors are entitled to nothing more than the amount of such premiums.

Such is the substance of the argument contained in the opinion in the case of *Shaver* v. *Shaver* (35 App. Div. 1), cited by the counsel for Mrs. Fleitmann.

In that case, however, the policy involved, which was made payable to the insured's brother, was a substitute for a prior policy, also payable to the brother and which had been issued ten years before the later one was taken out. There was no claim that the first policy was fraudulent.

The insured had not taken out a policy payable to his estate, but had always intended that his brother should be the beneficiary. Under these circumstances, the Appellate Division held that nothing had been transferred to which creditors were entitled, and there was no proof of fraud.

The case at bar in my opinion falls within the rule applied in *Continental National Bank* v. *Moore* (83 App. Div. 419), and the cases in Mr. Justice LAUGHLIN's opinion.

In that case the assignments were voluntary and made by the insured to his wife without consideration. It is true that the insured contemplated suicide when he made the transfer, but that fact I regard only as testimony bearing on the question of fraudulent intent.

The real question was, did the insured make the transfer for the purpose of putting his insurance beyond the reach of his creditors? To the determination of that question the intent to commit suicide was an important fact, and in connection with the insured's indebtedness to the bank of which he was the teller, arising out of his defalcations, his general insolvency and the criminal proceedings resulting from his defalcations in the bank, the court held that the transfer was made for the purpose of cheating his creditors. Mr. Justice LAUGHLIN said (p. 423): "The assignment of the policies was apparently voluntary. No consideration was recited, and the circumstances under which it was made fairly justify the inference that it was made in contemplation of the suicide and for the purpose of putting the insurance beyond the reach of his creditors."

In *Ionia County Savings Bank* v. *McLean* (84 Mich. 625) the facts were quite similar to the case at bar.

First Department, May, 1919.          [Vol. 188.

That action was brought by a creditor of Alexander McLean to set aside a deed of real estate made by said deceased a few months before his death and an assignment of a life insurance policy for $5,000 made to his son and daughter.

There was no consideration for the assignment, and at the time of his death McLean was insolvent.   The policy had been issued in 1871 and was payable to the insured, his executors, administrators or assigns.

The insured died in 1887.   The trial court set aside the deed, but refused to set aside the assignment, but the judgment in respect to the assignment was reversed upon appeal, the court saying: "In the absence of a valuable consideration aside from love and affection, it is conceded that the transfer of this insurance policy is void as to creditors, unless it is protected by How. Stat. § 4238."*

After holding it was not protected by that statute, it said further: "This policy was property, a chose in action, and up to the time of its assignment it was the property of Alexander McLean just as certainly and effectually as a promissory note payable 10 years from date, or upon the happening of a certain event, was his property.   Creditors had a right to rely upon that as one of his assets.   *   *   *   A life insurance policy being property, it follows that its assignment must be governed by the same rule as that of other property.   *   *   * Alexander McLean did not insure his life for the sole benefit of his wife and daughter.   He insured it for the benefit of his estate, in which his creditors were to be interested.   *   *   *

"The law recognizes no distinction in the transfer of a debtor's property.   Whatever is his, subject to his control, is his property for all intents and purposes; and in the absence of statutory provision, all transfers made by him must be governed by the same rule.   It is of no consequence that Alexander McLean might at any time during his life have surrendered this policy, for its cash value or otherwise, or that he might have converted any of his property into cash, and taken out insurance directly for the benefit of his wife and daughter.   The statute gave him that right.   But the question must be determined by what he did do, not by what he might have done."

* Now Howell's Mich. Stat. (2d ed.) § 8145.— [REP.

In *McKown's Estate* (198 Penn. St. 96) the facts are also similar to the case at bar.

On April 11, 1883, McKown took out a policy of insurance upon his life for $10,000 in the Manhattan Life Insurance Company, payable to his executors, administrators or assigns.

He died on June 21, 1897. In October, 1893, he assigned the policy to his wife, she knowing nothing of the transaction. At the time of the transfer the insured was indebted to the insurance company, which in 1894 recovered a judgment against him for the sum of $23,346.05. After the assignment McKown continued to pay the premiums on the policy. The court held that the assignment was fraudulent and void as to the creditors of McKown.

The testimony in this case leaves no doubt in my mind that Heinze transferred the policies to his sister in order to place the proceeds beyond the reach of his creditors.

The policies were by the terms payable either to the insured or to his executors, administrators or assigns. In other words, they were payable to his estate in which his creditors would be interested, a fact which is deemed of importance in all the cases I have examined and shows the intent of the assignor in making the assignment to withdraw the policy from creditors. With the exception of the policy issued by the Northwestern Mutual Life Insurance Company all the policies had privileges and conditions attached to them which made them valuable to the insured during his lifetime, and it is clear that he expected to exercise the same control over the policies and all such privileges and conditions after the assignments as he did before. This is shown by the loans obtained by him from the companies after the assignments were made with his sister's consent.

But apart from these considerations the policies were valuable contracts. They constituted property and their transfer without consideration when he was in debt for large amounts, and when, as I find, he was insolvent, must be governed by the same rules as the transfer of other property.

The fact that the policies did not have a cash value when the assignments were made is of no importance. That subject was considered in *Continental National Bank* v. *Moore* (83 App. Div. 419).

In that case the policies had a cash value when assigned and

a claim was made that the creditor could recover only such cash value. This claim was overruled, Mr. Justice LAUGHLIN saying (p. 424): "If these policies had remained payable to the estate of the decedent of course the insurance could be reached by his creditors. The attempted transfer being set aside as fraudulent and void as against the creditors and the insurance having become payable by the death of the decedent before the judgment annulling the transfer, it would seem both upon principle and authority that the full value of the policy having become fixed by his death, the entire insurance inures to the benefit of the creditors and not merely the cash value thereof."

The cases cited by counsel for Mrs. Fleitmann are not in conflict with the view I have expressed. I have already referred to *Shaver* v. *Shaver.*

In *Del Valle* v. *Hyland* (76 Hun, 494) actual consideration for the transfer was proven.

The defendant Fleitmann contends that the transfer cannot be set aside without proving that she as transferee was guilty of fraud.

The rule that to set aside a conveyance as fraudulent the fraud must be brought home to the assignee as well as to the assignor has no application to voluntary conveyances supported by no consideration. It applies only to transactions supported by a valuable consideration.

The point is also taken that the cause of action set out in the complaint was not an equitable one, and that the complaint should be dismissed.

If this objection to the complaint was good, it would affect only the mode of trial, that is, whether by the court or by a jury. It would not require or justify the dismissal of the complaint. The parties having stipulated to refer the action have waived trial by jury, and as the court has jurisdiction of the subject-matter, judgment conformable to the facts proven will be rendered.

The cause of action, however, is not legal, but equitable. The plaintiff does not sue to recover money due to himself, but money belonging to the estate of his debtor and the recovery in the action, if sustained, will not go to the plaintiff, but to the administrator of F. Augustus Heinze to be distributed by him through the Surrogate's Court.

My conclusion is that the assignments of the policies must be set aside and the money received by the defendant Fleitmann must be paid to Mr. Fullerton, the administrator of F. Augustus Heinze, with interest from the date of its receipt.

SMITH, J. (dissenting):

In 1912 F. Augustus Heinze was insolvent. He then assigned to his sister, this appellant, four life insurance policies which he held payable to his estate. This assignment was without consideration. It is conceded in the case that he had at the time of the assignment borrowed from the several companies in which such policies were held an amount equal to the full surrender value of the policies. After the assignment he paid the premiums as they became due upon the policies and immediately after the payment of the said premiums he, with consent of appellant, borrowed further sums upon the policies to reimburse himself for the premiums thus paid. The referee has found that the assignment of these policies without consideration while insolvent was presumptively fraudulent which presumption was not rebutted by the defendant, and upon this finding has directed the judgment appealed from. Heinze died in 1914 and this appellant as assignee collected the amounts due upon the policies.

Appellant has argued with much force that fraud could not be predicated on the assignment of life insurance policies which had no surrender value, because the creditors were not deprived of any substantial security. Authorities have been cited to sustain this proposition. I deem it unnecessary to consider this proposition, however, because of my view of the effect of the National Bankruptcy Act which reserves to the debtor all life insurance policies over and above their surrender value whatever may be the debtor's equity therein. Most, if not all of the authorities cited arose before the Bankruptcy Act of 1898, which secures this reserved right, and whatever may be their force, the conclusions arrived at are strongly fortified, as I view it, by the terms of the act.

The Constitution of the United States (Art. 1, § 8, subd. 4) gives to Congress the power to enact uniform bankruptcy laws. Pursuant to that constitutional prerogative Congress

has enacted a National Bankruptcy Act which provides that a bankrupt upon paying or securing to the trustee the cash surrender value of any life insurance policy which he may have, payable to himself, his estate, or personal representatives, may have returned to him that policy *for his own benefit.* (30 U. S. Stat. at Large, 565, 566, § 70, subd. a, cl. 5.) Under this provision of the law it has been held that if a policy has no surrender value it does not pass to the trustee, but is retained by the bankrupt for his own benefit. (Collier Bankruptcy [11th ed.], 1140.) The learned referee has found that these policies were transferred by F. Augustus Heinze to his sister to defraud his creditors. The intent thus found can only be construed as an intent to withdraw these assets from the reach of his creditors. This presents the simple question whether a debtor can be guilty of defrauding creditors by withdrawing from those creditors assets which were never within their reach. It is elementary that a creditor can only complain of a transfer by which he is harmed. If Heinze had voluntarily gone into bankruptcy these policies would still have been his own to dispose of as he pleased. If the creditors had put him into bankruptcy, these policies would still have been his own to dispose of as he pleased. By the acquiescence of these creditors he was not put into bankruptcy, probably because they thought a man of his ability, forty-five years of age, might recoup his misfortunes and work out of his financial difficulties. With the absolute right to reserve these policies for his own benefit under the Bankruptcy Act, the creditors lost nothing by his assignment to his sister, and it is difficult to see how he can be charged with fraud for withdrawing from his creditors property which he would have the absolute right to withhold from them if they had proceeded to put him in bankruptcy. It may be contended that the right to withhold this asset from creditors was conditioned upon the debtors taking advantage of the Bankruptcy Act. If this were a question of the passing of title this argument would not be without force. A statute prescribing a method by which title shall pass must be strictly followed, otherwise title will not pass. But here title passed to the assignee subject only to impeachment by the creditors for fraud. I cannot conceive, however, how fraud can be

predicated upon the method employed when the method itself was not adopted with a fraudulent purpose.    In other words, if the creditors could not claim this asset in bankruptcy, they cannot claim it on the ground of fraudulent transfer when the debtor abstained from bankruptcy with the creditors' acquiescence.    The reservation by the Bankruptcy Act to the bankrupt of the right to this policy beyond the surrender value may well be based upon public policy on the ground that an insurance policy would have a markedly greater value to the debtor than to his creditors.    A trustee would have no right to hold the policy and pay premiums from the bankrupt estate that the creditors might eventually benefit by the debtor's death. (*Matter of McKinney* 15 Fed. Rep. 535.)    He could only surrender the policy and take the surrender value.    This public policy would negative fraud in this transfer, though the debtor did not go into bankruptcy.    But, irrespective of the considerations of public policy, I am of the opinion that fraud cannot be predicated of a transaction which could not have been successfully challenged during the life of the debtor, because if then challenged the debtor could have protected his transfer by invoking the protection of the National Bankruptcy Act. This conclusion is not in antagonism to the case of *Continental National Bank* v. *Moore* (83 App. Div. 419), because in that case the policy had a surrender value which was attempted to be fraudulently transferred.    Nor does it conflict with the decision in *Reynolds* v. *Ætna Life Insurance Co.* (160 N. Y. 635).    In the policy there under consideration there was a surrender value and it was held that the title to the policy had passed to the receiver in supplementary proceedings.    In fact no case is cited, either before or since the passage of the National Bankruptcy Act of 1898, in which the transfer of a life insurance policy has been held fraudulent where the policy had no surrender value.

I recognize that the question as here presented is a novel one. But its importance is manifest.    Upon the question of actual fraud, however, which must here be found to avoid this transfer the absolute legal right to withhold these policies from creditors under the Bankruptcy Act is to my mind a controlling factor.    I vote for a reversal of the judgment and a dismissal of the complaint.